IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PAUL GENTRY, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>PRINCIPAL LIFE INSURANCE )<br>COMPANY, )<br>)<br>    Defendant. ) | Case No. 3:09-cv-0681<br>Judge Nixon<br>Magistrate Judge Bryant<br><br>JURY DEMAND |

## ORDER

Pending before the Court is Defendant Principal Life Insurance Company's ("Defendant" or "Principal Life") Motion to Dismiss or for Summary Judgment ("Defendant's Motion") (Doc. No. 12) and supporting Memorandum (Doc. No. 13). Plaintiff Paul Gentry ("Plaintiff" or "Gentry") filed a Response (Doc. No. 20), to which Defendant filed a Reply (Doc. No. 23).

Defendant's Motion, filed on September 8, 2009, asks the Court to dismiss Plaintiff's Complaint, filed on July 27, 2009 (Doc. No. 1), on the grounds that Plaintiff's claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. (Doc. No. 12 at 1.) After Defendant filed its Motion, Plaintiff filed an Amended Complaint (Doc. No. 16) on September 15, 2009, alleging certain state law claims, *id.* at 3-5, as well as a violation of ERISA, *id.* at 5-6. On November 9, 2009, Plaintiff filed a Notice of Voluntary Dismissal as to all the claims in his Amended Complaint save the ERISA claim (Doc. No. 25), which the Court approved on November 12, 2009 (Doc. No. 26). While Defendant's Reply brief argues that Plaintiff's Amended Complaint is a "nullity" because Plaintiff did not seek the

Court's leave to file it (Doc. No. 23 at 2-3), a plaintiff is permitted, per Federal Rule of Civil Procedure 15(a)(1)(B) to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)[.]" Plaintiff's Amended Complaint was filed on September 15, 2009, seven calendar days after Defendant filed its Rule 12(b) Motion to Dismiss. His Amended Complaint is thus properly before the Court. Given that Plaintiff has abandoned all claims save his ERISA claim, Defendant's Motion to Dismiss or for Summary Judgment on the grounds that Plaintiff's state law claims are preempted by ERISA is hereby **DENIED as moot**.

Also pending before the Court is Plaintiff's Motion for Judgment on the Record (Doc. No. 33) ("Plaintiff's Motion") with supporting Memorandum (Doc. No. 34). Defendant filed a Response in Opposition (Doc. No. 38), requesting that the Court deny relief to Plaintiff and affirm Defendant's claim determination.

For the reasons stated herein, the Court **DENIES** Plaintiff's Motion.

**I.     BACKGROUND[1]**

Plaintiff is the 100% owner of a C-Corporation known as Old Timer Log Homes and Supply, Inc. ("OTLH"). On December 22, 2004, OTLH applied for a group long-term disability insurance policy with Defendant for its employees (hereinafter referred to as "members" or "insureds"). A policy numbered GLT H16294 ("the Policy") was issued by Defendant on January 4, 2005. OTLH is the Policyholder. The Policy states:

**Primary Monthly Benefit**

66 2/3% of the Member's Predisability Earnings . . .

(Gentry 0254).

---

[1] Unless otherwise noted, all facts are taken from the ERISA record filed in this case (Doc. Nos. 27-1 & 27-2). The pages of the administrative record are designated as Gentry 0001 - Gentry 0487, and the Court will refer to them by those page numbers for ease of reference when necessary.

**Predisability Earnings**

A Member's Monthly Earnings in effect prior to the date Disability begins.

*Id.*

**Monthly Earnings**

For Members with *no ownership interest* in the business entity of the Policyholder:

On any date, a Member's *basic monthly (or monthly equivalent) wage* then in force, as established by the Policyholder. Basic wage does not include commissions, bonuses[,] tips, differential pay, housing and/or car allowance, or overtime pay. Basic wage does include any deferred earnings under a qualified deferred compensation plan such as contributions to Internal Revenue Code Section 401(k), 403(b) or 457 deferred compensation arrangements and any amount of voluntary earnings reduction under a qualified Section 125 Cafeteria Plan.

For Members *with ownership interest in the business entity of the Policyholder*, such as an owner of a sole proprietorship, a partner in a partnership, *a shareholder of a corporation* or subchapter S-corporation, or a member of a limited liability company or limited liability partnership, Monthly Earnings on any date are based on an average of the following earnings as reported for Federal Income Tax purposes for the last two calendar year(s), assuming the owner meets all eligibility requirements:

a. the Member's share (based on ownership or contractual agreement) of the gross revenue or income earned by the Policyholder, including income earned by the Member and others under the Member's supervision or direction; less

b. the Member's share (based on ownership or contractual agreement) of the usual and customary unreimbursed business expenses of the Policyholder which are incurred on a regular basis, are essential to the established business operation of the Policyholder, are deductible for Federal Income Tax purposes, and do not exceed the expenses before Disability began; plus

c. the salary, benefits, and other forms of compensation which are payable to the Member, and any contributions to a pension or profit sharing plan made on the Member's behalf by the Policyholder.

Monthly earnings do not include any form of unearned income such as dividends, rent, interest, capital gains, income received from any form of deferred

> compensation, retirement, pension plan, income from royalties, or disability benefits.

(Gentry 0250-0251 (emphasis added).)

Plaintiff suffers from Parkinson's Disease, and on October 16, 2007, he initiated a claim for disability under the Policy alleging an onset date in 2007. Defendant initially denied Plaintiff's claim on February 28, 2008 because it determined that Plaintiff was not disabled per the definition in the Policy. It also questioned whether Plaintiff would be entitled to more than the Policy's $50 per month minimum benefit as a result of the Policy's "Owner's Monthly Earnings" definition because the Policyholder (OTLH) had sustained substantial net losses during the two years prior to the alleged onset of disability. Using OTLH's corporate tax returns and W-2s for 2005 and 2006 that Gentry had provided, one of Defendant's financial analysts extracted from those tax documents OTLH's gross revenue, total expenses, and the amount OTLH paid Plaintiff in salary. The financial analyst then calculated the "Owner's Monthly Earnings" or "Predisability Earnings," as described above. This calculation showed that Plaintiff had negative "Predisability Earnings." The Policy provides that all eligible Members, even those whose monthly earnings (calculated as described above) are negative numbers, may receive the minimum $50 per month benefit. Defendant advised Plaintiff of these calculations and detailed them for him in a letter dated January 22, 2008. (Gentry 0312-0330.)

In August of 2008, Plaintiff requested that Defendant reconsider its determination that Plaintiff did not meet the Policy's definition of "Disability." In October of 2008, Plaintiff's counsel stated in a letter to Defendant that the "Owner's Monthly Earnings" provision only applied to "entities organized as S chapter corporations, LLCs, LLPs, sole proprietors and partners." (Gentry 0361.)

In a letter dated November 17, 2008, Defendant concluded that Plaintiff did meet the definition of "Disability" but informed Plaintiff that he was only entitled to the minimum monthly benefit of $50 because he had no "Reported Monthly Compensation." (Gentry 0092-0094.) When Plaintiff's counsel inquired as to how Defendant had arrived at the benefit amount, Defendant forwarded on November 20, 2008 a copy of the January 22, 2008 letter which went through the calculations of the "Owner's Monthly Earnings." (Gentry 0310.)

After a telephone call with Plaintiff's attorney, Defendant clarified in a letter that the "Owner's Monthly Earnings" provision quoted above includes the C-Corporation Policyholder's revenues and expenses along with the controlling shareholder-insured's salary. (Gentry 0090.) Plaintiff appears to have argued that the revenues and expenses of a C-Corporation should not be included under the definition because the Internal Revenue Code does not consider a C-Corporation a pass-through entity (*i.e.*, OTLH's income and expenses are not treated as Plaintiff's income and expenses for tax purposes, as they would be if OTLH were an S-Corporation or a limited liability company). Defendant explained that the Policy's "Owner's Monthly Earnings" provision (requiring the consideration of revenues and expenses) was based on the level of influence that owner-insureds could have over compensation, and that the provision was not based solely on how income is classified under the Internal Revenue Code. *Id.*

On January 26, 2009, Plaintiff again sought reconsideration of Defendant's benefit amount decision, but presented no new argument or information. *See* Gentry 0301-0305. By letter dated February 25, 2009, Defendant affirmed its benefit amount decision, reiterating its previous reasoning. Plaintiff filed the instant action in this Court on July 27, 2009.

## II. STANDARD OF REVIEW

When an ERISA plan grants the plan administrator discretionary authority to determine benefit eligibility, the district court must review the plan administrator's decision under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003). Here, the Plan states that the plan administrator "reserve[s] the discretion to construe or interpret the provisions of this group insurance, to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided." (Doc. No. 27-1 at 14.) Plaintiff does not dispute that the Plan grants discretionary authority to Defendant's plan administrator, and agrees that the arbitrary and capricious standard should apply. (Doc. No. 34 at 3.)

Under the arbitrary and capricious standard of review, the plan administrator's decision will be upheld if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (citing *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Although the standard is deferential, the review "is no mere formality." *Glenn*, 461 F.3d at 666.

A benefit determination is not arbitrary and capricious if it is "rational in light of the plan's provisions." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (internal citations omitted). This standard "is the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal citations omitted).

### III.   ANALYSIS

Plaintiff claims that Defendant's refusal to pay Plaintiff the appropriate benefit amount is incorrect, arbitrary, and capricious, and was not made in good faith. (Doc. No. 16 at ¶ 34.) He alleges that this refusal is in violation of 29 U.S.C. § 1001 *et seq.*, and that he is entitled to actual damages plus interest and attorney's fees. *Id.* at ¶¶ 34 & 35.

Plaintiff first argues that the "Owner's Monthly Earnings" provision of the Policy, which calculates monthly earnings based on gross revenue, less business expenses, plus compensation to the member-owner in question, was applied arbitrarily and capriciously, as Defendant "utilized factors not . . . delineated in the Policy to determine [Plaintiff's] monthly earnings." (Doc. No. 34 at 4.) He argues that because OTLH is a C-Corporation, OTLH "pays all taxes and absorbs all losses on a stand alone [sic] basis—that is, no profits or losses from . . . OTLH pass to any owners." *Id.* Defendant, instead of "solely utilizing the wages that [Plaintiff] reported to IRS," "elected to include the net loss reported by OTLH in calculating his monthly earnings." *Id.* Plaintiff points to Defendant's February 25, 2009 letter, where it stated that its calculation of Plaintiff's monthly earnings would not be recalculated, and asserted:

> As you are aware, Mr. Gentry is 100% owner of a C-Corporation. Due to the resulting influence Mr. Gentry had over the operations of the business, his share of the gross revenues and usual and customary un-reimbursed expenses of the Policyholder are included in the determination of benefits.

(Gentry 0085.) Plaintiff argues that this represents an arbitrary and therefore impermissible use of a factor not delineated in the Policy by Defendant in calculating his benefits, inferring that "under some circumstances it would not utilize the earnings of a C Corporation in calculating monthly earnings[,]" depending on the level of influence a given owner had.

The Court declines to give to this statement the meaning that Plaintiff infers. As will be discussed below, this language appears reasonably to the Court to restate the essential

justification behind Defendant's use of a separate calculation for Members with ownership interests under the Policy from the calculation for Members without such an ownership interest, and does not represent the use of a separate factor of "influence." Accordingly, the Court declines to find that Defendant acted arbitrarily and capriciously in interpreting this provision.

Plaintiff next argues that Defendant's reading of the Policy is contrary to its plain language and is therefore "arbitrary and capricious." (Doc. No. 34 at 5.) He argues that the "Owner's Monthly Earnings" provision in the Policy, as interpreted by Defendant "ignores [the] plain meaning [of the word "earnings"], uses it out of context and applies [it] in a manner resulting in an unconscionable result for" Plaintiff. *Id.* at 6. Plaintiff argues that, despite repeated use of the word "earnings" in the Policy, the term is never directly defined. *Id.* Plaintiff contends that "earnings" should be given its plain meaning (citing *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322 (8th Cir. 1995)), and highlights the Merriam-Webster Dictionary's definition of "earnings" as "1: something (as wages) earned; 2: the balance of revenues after deductions of costs and expenses." (Doc. No. 34 at 7.) Plaintiff suggests that the second definition is "more appropriate" here "where expenses are greater than revenues": accordingly, "there would be no 'balance of revenues' and consequently no 'earnings.'" *Id.* Plaintiff's monthly earnings, per the Policy, therefore, would not be reduced below his salary. Plaintiff contends that Defendant "ignores this plan meaning of 'earnings' . . . [and] use net losses incurred by OTLH to offset the salary earned by" Plaintiff. *Id.* He concludes: "This result flies in the face of common sense, the plain language of the Policy and all equity. Plaintiff submits that this interpretation (180 degrees from true) is arbitrary and capricious and should not be upheld." *Id.* Defendant requests that the Court order Defendant to pay benefits calculated solely on Plaintiff's salary for the applicable calendar years. *Id.*

Defendant argues in response that ERISA requires that it apply the plain meaning of the "Owner's Monthly Earnings" definition in determining Plaintiff's benefit amount, and that it did so rationally. (Doc. No. 38 at 11.) The Court, after a review of the Policy and Defendant's determination of Plaintiff's Monthly Earnings in light of the Policy, agrees.

ERISA requires that benefit plans be in writing, 29 U.S.C. § 1002(a)(1), that benefit claims be determined "in accordance with the documents and instruments governing the plan," § 1104(a)(1)(D), and that actions for benefits under ERISA be limited to those claims for benefits due to the claimant "under the terms of the plan[,]" § 1132(a)(1)(B). The Supreme Court has held that ERISA plan claims administrators must pay claims in accordance with plan terms. *Kennedy v. Plan Admin. for Dupont Sav. & Inv. Plan*, ___ U.S. ___, 129 S. Ct. 865, 875 (2009). Courts, also, must interpret ERISA plan provisions according to their plain meaning. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). In applying the "plain meaning" analysis, the court must "give effect to the unambiguous terms of an ERISA plan." *Id.* (internal citations omitted). However, when reviewing the plain meaning of provisions within an ERISA plan, a court should defer to the administrator's decision. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 717 (6th Cir. 2000).

Plaintiff argues that Defendant ought only to have considered his salary in its calculation of his monthly earnings. (Doc. No. 34 at 7.) However, the Policy clearly has two definitions for monthly earnings: one is for Members without an ownership interest in the Policyholder, and the other is for Members with an ownership interest. One such "ownership interest" is expressly explicated in the Policy as "a shareholder of a corporation . . . ." If such an ownership interest exists, the Policy requires Defendant to take into account not only the insured's salary but also the Policyholder's gross revenue and expenses. Monthly earnings are only calculated based on

salary alone if the insured does not have an ownership interest in the Policyholder under the plan's terms.

It is undisputed that Plaintiff is a shareholder of OTLH; indeed, he is the 100% owner. The unambiguous terms of the Policy indicate that his monthly earnings calculation takes into account the gross revenues and expenses of the Policyholder, as well as Plaintiff's salary. The Court therefore finds that the plan administrator was rational, and therefore not arbitrary and capricious, in applying the "Owner's Monthly Earnings" provision, as described above, to Plaintiff.

Plaintiff next argues that the definition of "Owner's Monthly Earnings," referring to "a shareholder of a corporation," does not apply to C-Corporations, and that only pass-through entities fall within that definition. Defendant argues, and the Court agrees, that, at a bare minimum, a contrary reading of the plain language of the Policy's definition of "Owner's Monthly Earnings" is not irrational, arbitrary, or capricious. The Policy illustrates different kinds of ownership interest that will result in the consideration of the Policyholder's gross revenues and expenses in addition to the insured's salary when calculating monthly earnings: "an owner of a sole proprietorship, a partner in a partnership, *a shareholder of a corporation* or subchapter S-corporation, or a member of a limited liability company or a limited liability partnership" (emphasis added). As Defendant notes, "[a]ll of those illustrations describe so-called 'pass-through' entities except the illustration that is precisely applicable here: 'a shareholder of a corporation.'" (Doc. No. 38 at 14.) The Policy specifically includes in the above provision both "a corporation" and a "subchapter S-corporation"—"the classic 'pass-through' corporate entity[.]" *Id.* If the provision applied only to pass-through entities, "it would suffice to list only 'a subchapter S-corporation' and it would be unnecessary to list 'a

corporation.'" *Id.* The Court declines to impose upon the plan administrator an interpretation of the "plan terms that would render [some of] them mere surplusage." *Id. See Harris v. The Epoch Group, LC*, 257 F.3d 822, 825 (8th Cir. 2004); *Rodriguez v. Tenn. Labor Health & Welfare Fund*, 89 Fed. App'x 949, 954 (6th Cir. 2004).

Adopting Plaintiff's construction would also have the effect of amending the provision to allow for calculation of monthly earnings based on salary alone for both members without an ownership interest (as the provision currently allows) but also for those members who own stock in C-Corporation policyholders. (*See* Doc. No. 38 at 15.) The Court will not amend this provision, but rather will allow the plan administrator to give it its literal and natural meaning. *See Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 455 (6th Cir. 2009). As Defendant notes, Plaintiff simply argues that his salary, as the sole amount received from the Policyholder on which he pays federal income tax, is the proper measure of his "monthly earnings." (Doc. No. 38 at 15.) However, the clear and unambiguous terms of the Policy provide for an alternative method of measuring the monthly earnings for those insureds with ownership interests in the policyholder, as Plaintiff undisputedly has. The Court will not substitute Internal Revenue Code provisions, nor dictionary definitions, in place of the clear, controlling, and operative language of the "Owner's Monthly Earnings" provision of the Policy here at issue. *See D&H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 650 F. Supp. 2d 143, 155-56 (D.R.I. 2009); *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1131 (5th Cir. 1996). The "face of [the] written plan document[]" supports Defendant's determination, *see Kennedy*, 129 S. Ct. at 875. This Court declines to find that such a determination is irrational, arbitrary or capricious.

## IV. CONCLUSION

Plaintiff has failed to meet his burden to demonstrate that Defendant's benefit decision was arbitrary and capricious. Because Defendant's decision was rational in light of the plan's provisions, Defendant's benefit determination must be upheld. For the reasons stated above, the Court **DENIES** Plaintiff's Motion, and **GRANTS** Defendant's Motion to Deny Relief.

It is so ORDERED.

Entered this ____31st_____ day of March, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT